Filed 5/14/25  P. v. Estrada CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JORGE ESTRADA,<br><br>        Defendant and Appellant. | A172564<br><br><br>(Riverside County<br>Super. Ct. No. SWF2102224) |

Jorge Estrada appeals from the judgment following his conviction by a jury of attempted carjacking (count 1; Pen. Code, §§ 664, 215)[1] and driving with willful or wanton disregard for safety of person or property while evading a peace officer (count 2; Veh. Code, § 2800.2), and the trial court's true finding on defendant's prior strike convictions and five factors in aggravation.[2]  Defendant argues that his carjacking conviction is not supported by substantial evidence and that the trial court (1) improperly admitted evidence of items found in defendant's car, (2) erroneously instructed the jury regarding uncharged conduct and flight, and (3) abused

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] This matter was transferred by California Supreme Court order on February 25, 2025, from the Fourth Appellate District to the First Appellate District.

its discretion when it refused to strike defendant's prior convictions. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Our factual summary is based upon the substantial evidence standard of review, under which we view the evidence in the light most favorable to the prosecution and presume the existence of every fact the jury could reasonably deduce from the evidence that supports the judgment. (*People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1543.)

On December 22, 2021, approximately 3:00 a.m., Murrieta Police Officer Valle was patrolling an area where there was reported a high number of burglaries, thefts, and drug activities. She observed a blue car driving slowly behind closed retail businesses. Officer Valle pulled behind the blue car and noticed one of its taillights was out. She activated her patrol lights to conduct a traffic stop. She also suspected the driver, later identified as the defendant, might be a possible burglary suspect because he was driving behind retail businesses at 3:00 a.m. in an area that experienced a high volume of burglaries. The blue car continued driving slowly at first and then "floored it." Officer Valle turned on her siren and broadcast to dispatch that she was pursuing the fleeing vehicle. The blue car drove at least 70 miles per hour in a 45-miles-per-hour zone. It weaved into the oncoming traffic lane and accelerated through two red lights. After traveling a little over a mile, the blue car drove over an embankment and became stuck in a ditch. Officer Valle ran from her patrol car to the top of the embankment, where she saw the defendant run from his car into a used car business. She broadcast the defendant's description and his direction of foot travel.

Andre T., who worked as a car hauler, was delivering cars to the used car dealership in Murrieta when the defendant tried to take one of the cars

2

Andre T. was delivering. Andre T. heard police sirens and saw red and blue lights in the distance as he was delivering a load of cars. He saw defendant running through the parking lot. Defendant turned his head to look at Andre T., and then defendant's "body did a complete 180" turn and ran directly toward Andre T. Andre T. was standing in front of the open driver's side door of a car he was delivering to the used car dealership. Andre T. said to defendant, " 'Don't do it.' " Defendant ran very fast toward Andre T. and "bum rush[ed]" him to get inside the car. Andre T. was pushed inside the car with defendant, and defendant extended his hands out, "frantically looking for . . . the keys." Andre T. struggled with defendant for about 20 seconds, during which time Andre T. checked defendant's body for weapons. He found a box cutter on defendant and kicked it out of the car. Other people saw the commotion and came to help pull defendant out of the car. Within a minute, the police came.

Officer Valle and another officer searched the defendant's abandoned car. The entire car, other than the driver's seat, was full of packages and other items. Many of the packages were unopened boxes of toys. A lighted flashlight was on the driver's side floorboard, and there was a hammer near the center console.

The defense called Murrieta Police Officer Acda. Officer Acda was dispatched to the car dealership on December 22, 2021. When he arrived at the scene, the defendant was being held on the ground and other police officers were present. Officer Acda took a statement from Andre T. Andre T. said defendant pushed past him. Andre T. said he held his arms out in a bear hug motion to protect himself. Then they both fell into the car, and Andre T. was on top of defendant.

## DISCUSSION

### I.  *Substantial Evidence of Attempted Carjacking*

Carjacking "is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, . . . against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." (§ 215, subd. (a).)  The elements of an attempt to commit a crime are (1) a specific intent to commit the crime and (2) a direct but ineffectual act done toward its commission. (§ 21a.)

Defendant contends there is no substantial evidence that defendant took a direct but ineffective step toward committing carjacking, that he used force or fear to do so, or that he intended to commit carjacking.  He claims the evidence only establishes that defendant ran toward Andre T. and that Andre T.'s testimony denying that he grabbed defendant before they fell into the car does not make sense.  According to defendant, "the more likely scenario" is that Andre T. grabbed defendant as defendant came toward him and that is how Andre T. ended up falling into the car on top of defendant.  Defendant further claims the evidence does not support a finding that he intended to take the car.  He claims Andre T.'s testimony that defendant was frantically looking for the car keys was speculative and cannot support a reasonable inference.  Defendant's intent was unclear because he never told Andre T. he wanted the keys or wanted to take the car.  Defendant contends that he may have been struggling to get Andre T. off him.

Defendant's suggestion that alternative inferences may be drawn from the evidence is not enough to warrant reversal under the substantial evidence standard of review. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)  The defendant sped away from a police officer who attempted a traffic stop,

4

drove his car into a ditch, and then continued fleeing on foot. As he was running, he saw Andre T. standing in front of the open driver side door of a car and quickly changed his direction and ran right toward him. As the defendant "bum rush[ed]" him, Andre T. said, " 'Don't do it,' " as they fell into the car. Defendant struggled with Andre T. and extended his arms out looking for the keys. Although the defendant did not expressly say he was looking for the keys or that he planned to steal the car, the jury reasonably inferred from the evidence that defendant intended to do so. (*People v. Thomas* (2011) 52 Cal.4th 336, 355 ["Mental state and intent are rarely susceptible of direct proof and must therefore be proven circumstantially"].) The circumstances here more than reasonably justify the jury's findings that defendant attempted to take the car and used force or fear to do so.

## II. *Trial Court Did Not Err in Admitting Evidence of Items Found in Defendant's Car*

Defendant argues the trial court erred when it admitted into evidence the items found in defendant's car to prove motive to evade the police. He argues the evidence of the flashlight, hammer and packages found in defendant's car should not have been admitted because there was no direct relationship between those items and any uncharged crime of burglary or attempted burglary. He also argues that the evidence lacked probative value as to motive.

### A. Additional Background

The People filed a motion to admit evidence of items found in defendant's car. The People argued that although defendant was not charged with any other crime based on the evidence found in his car, the evidence of those items was admissible under Evidence Code section 1101, subdivision (b) as relevant to defendant's motive to evade the police. Defense counsel countered that there was no evidence the items were ever used as burglary

5

tools and that evidence of the items should be excluded under Evidence Code section 352 because its admission would be more prejudicial than probative. The trial court granted the People's motion, stating that although it would not allow the officer to testify that the items were burglary tools or that the packages were stolen, "the fact that some tools, a flashlight, and packages were . . . in the vehicle and he left the vehicle, there might be a reasonable assumption that that created a motive to leave the vehicle, to run, not be caught in the vehicle itself." It ruled the items were admissible under Evidence Code section 1101, subdivision (b), not to establish that defendant had a disposition to commit a crime but as relevant to "motive to leave the area." It further rejected defendant's argument that the evidence should be excluded under Evidence Code section 352, finding no substantial danger of prejudice or confusion.

During closing argument, the prosecutor stated: "So I want to talk to you about what was found in the car by Officer Valle after the defendant was subdued, after they found the suspect who was fleeing. She finds a hammer ready in wait in the front seat. . . . She and her partner, Officer Hayes, find a flashlight in the ready position. It's already on . . . . And lo and behold, the backseat is full of unopened packages. There's an inference to be made there when you think about why is he fleeing? . . . [¶] . . . [¶] . . . Look at the entire situation. It's 3:00 a.m., closed business park. He's driving slowly, not sleeping. Hammer in the front seat, flashlight on the backseat, full of unopened packages; right? Does he want to be caught with all of those things when he gets pulled over by the officer?" (*Sic.*) In rebuttal closing, the prosecutor explained the limited purpose of the evidence of the items in defendant's car: "Do not consider the evidence for any other purpose except for its limited purpose as to defendant's motive to flee. We're not saying

6

convict [defendant]. He obviously committed a burglary. That's not what we're saying here, just is that evidence of his motive to flee? You get to consider that. [¶] The . . . People, do not want you to convict him because there's evidence that, by a preponderance of the evidence, there may have been an attempt or an actual burglary committed. That is not what we're asking you to do here. That's just evidence."

## B. Analysis

Evidence Code section 1011, subdivision (a) generally prohibits admission of character evidence, including specific instances of uncharged misconduct. However, subdivision (b) states: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . . ) other than his or her disposition to commit such an act." Evidence Code section 352 states that a trial court "may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Under Evidence Code section 352, evidence is considered prejudicial if it predominantly tends to evoke an emotional bias while having only slight probative value to the issues. (*People v. Robinson* (2005) 37 Cal.4th 592, 632.)

We review evidentiary rulings for abuse of discretion and will not reverse absent a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10.) Under this deferential standard, defendant's claim fails. Defendant fled from

7

the police and drove his car into a ditch. He then fled on foot and attempted to carjack a car being delivered to a used car lot. The items found in defendant's car suggest a possible motive for defendant's fleeing the police. The fact that Officer Valle testified there were no reports of any burglaries in the area does not make the evidence inadmissible. The evidence was relevant in that it suggested a possible motive for defendant to evade the police, and it was admitted only for this limited purpose. The introduction of the evidence did not necessitate an undue consumption of time and was not unduly prejudicial. The trial court properly exercised its discretion to admit the evidence for the limited purpose of establishing motive. (*Rodriguez, supra*, 20 Cal.4th at pp. 9–10.)

### III. *Instructional Errors*

Defendant contends the trial court erred in giving CALCRIM No. 372 (Defendant's Flight) and CALCRIM No. 375 (Evidence of Uncharged Offense to Prove Identity, Intent, Common Plan, Etc.). We review claims of instructional error de novo to determine whether the evidence supported the giving of the instruction. (*People v. Cole* (2004) 33 Cal.4th 1158, 1217.)

### A. CALCRIM No. 372

CALCRIM No. 372 states: "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself." Defendant objected to this instruction on the basis that there was no evidence that he committed a crime before he evaded Officer Valle. The Prosecutor responded that the instruction was applicable because the defendant fled on foot after first evading Officer Valle in his car.

The trial court agreed that CALCRIM No. 372 as applied to the facts "pertains primarily to what happened after the vehicle chase."

Defendant argues CALCRIM No. 372 should not have been given because there was ample evidence that the car was evading the officer and therefore CALCRIM No. 372 "added nothing." He asserts that it was unclear whether the "crime" referenced in the instruction referred to defendant's flight on foot after evading the officer, or to burglary or attempted burglary, of which he asserts there is no evidence. We reject defendant's argument. The flight instruction is appropriate when, as here, the evidence shows that defendant left the scene under circumstances suggesting his purpose was to avoid being observed or arrested. (*People v. Bonilla* (2007) 41 Cal.4th 313, 328.) "To obtain the instruction, the prosecution need not prove the defendant in fact fled, i.e., departed the scene to avoid arrest, only that a jury *could* find the defendant fled and permissibly infer a consciousness of guilt from the evidence." (*Ibid.*) Defendant sped away from Officer Valle after she attempted to conduct a traffic stop, weaved into the oncoming traffic lane, and ran two red lights before going over an embankment. At that point, defendant left his car in a ditch and fled on foot. From this evidence, the jury could infer that defendant left his car " 'to avoid being observed or arrested.' " (*Bonilla, supra,* 41 Cal.4th at p. 328.)

Substantial evidence supported the flight instruction. Defendant objected to the giving of the instruction; however, as the People note, defendant did not request any clarifying language to specify that the "crime" referred to in the instruction did not mean the uncharged crime of burglary or attempted burglary. " '[A] party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying . . .

9

language.' " (*People v. Jones* (2013) 57 Cal.4th 899, 969–970.)  The trial court did not have a sua sponte duty to clarify the instruction with a pinpoint instruction that was never requested.  (*People v. Hughes* (2002) 27 Cal.4th 287, 361.)  Moreover, as discussed *post*, the jury was instructed as to the limited purpose of evidence of burglary or attempted burglary.  Considering the instructions as a whole and in context, and assuming the jury understood and followed the instructions, we find no error. (*People v. Barber* (2020) 55 Cal.App.5th 787, 798.)

### B.    CALCRIM No. 375

CALCRIM No. 375 explains the limited purpose of evidence of other crimes that has been admitted under Evidence Code section 1101, subdivision (b).  (CALCRIM No. 375.)  Defense counsel objected to the instruction on the basis that the items found in defendant's car were "benign" and there was no evidence that a burglary or attempted burglary had been committed.  The prosecutor countered that given the totality of the evidence, including that defendant was driving slowly behind closed businesses at 3:00 a.m. in an area with a high number of burglaries and then sped away when the police attempted to conduct a stop, the items found in defendant's car where not necessarily benign.  She argued that the instruction should be given to explain to the jury the limited purpose for which the items in defendant's car were admitted under Evidence Code section 1101, subdivision (b).

The jury was instructed with CALCRIM No. 375 as follows:  "The People presented evidence that the defendant committed the offense of attempted burglary or burglary that was not charged in this case. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offense.

10

Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that the fact is more likely than not to be true. [¶] If the People have not met this burden, you must disregard this evidence entirely. [¶] If you decide that the defendant committed the uncharged offense, you may, but are not required to, consider that evidence for the limited purpose of deciding whether: [¶] . . . [t]he defendant had a motive to commit the offenses alleged in this case. [¶] . . . [¶] Do not consider this evidence for any other purpose except for the limited purpose of defendant's motive to flee. [¶] Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime. [¶] If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of evading or attempted carjacking. The People must still prove each charge beyond a reasonable doubt."

Defendant argues the trial court erred by giving the instruction because there was no evidence of the offense of burglary or attempted burglary and the trial court already ruled that Officer Valle could not refer to the items as "burglary tools." Officer Valle testified that there were no reports of burglary in the area the night defendant was arrested. However, she also testified to her suspicions based on defendant's conduct of driving slowly behind closed businesses in the middle of the night in an area that experienced a high volume of burglaries. In addition, defendant fled when Officer Valle attempted to conduct a traffic stop and then abandoned his car and continued fleeing on foot. As discussed *ante*, the trial court did not abuse its direction in admitting the items found in defendant's car. Nor was it error to give CALCRIM No. 375, which instructs the jury as to the limited purpose

11

of the evidence of a possible uncharged offense. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1119 [no prejudicial error in admitting motive evidence when "the court's instructions minimized any danger that the jury might rely upon [said evidence] for an improper purpose"].)  Contrary to defendant's argument, CALCRIM No. 375 properly instructed the jury as to the limited use of the evidence of possible uncharged offenses and minimized any danger that the jury would consider that evidence to infer bad character or a propensity to commit crime.

However, even if we assume error, we perceive no reasonable probability that defendant would have obtained a better result had CALCRIM No. 375 not been given. (*People v. Watson* (1956) 46 Cal.2d 818, 836–837.)  The uncontroverted eyewitness testimony of Officer Valle and Andre T. established that defendant evaded the officer and attempted to carjack Andre T.

### C.    No Due Process Violation

Defendant asserts that he was denied due process and a fair trial based on the allegedly erroneous admission of evidence, the instructional errors, and the prosecutor's comments during closing argument regarding the items found in defendant's car and whether he had a motive to flee.  We reject this claim because we find no evidentiary or instructional errors.  Defendant's argument that these alleged errors were compounded by the prosecutor's statements during closing argument also fails.  The defendant complains of the prosecutor's statement that he was " 'on the prowl' " and to her references to the hammer, flashlight, and unopened packages and the implication that defendant was motivated to flee because he did not want to be caught with those items.  He contends that although there was no evidence of a burglary,

12

the prosecutor "used an impermissible propensity inference to portray defendant as a burglar . . . ."

The prosecutor's argument fairly commented on the evidence that was properly admitted for the limited purpose of demonstrating a possible motive. The prosecutor specifically referred to CALCRIM No. 375 and stated that the uncharged crime evidence was only to be used for the limited purpose of establishing defendant's motive to flee. We find no error either individually or cumulatively. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1010, 1030 [stating "[t]he 'routine application of state evidentiary law does not implicate [a] defendant's constitutional rights' " and rejecting cumulative error argument].)

## IV. *Denial of Romero Motion Was Not an Abuse of Discretion*

After denying defendant's motion to strike his prior strikes, the trial court sentenced defendant to 25 years to life with the possibility of parole on count 1 (Pen. Code, §§ 664, 215), consecutive to a determinate term of 16 months on count 2 (Veh. Code, § 2800.2), consecutive to a term of five years for one of defendant's prior serious felonies.

Defendant argues the trial court abused its discretion when it denied his motion to strike his prior strike convictions. Under subdivision (a) of section 1385, the trial court may dismiss a prior strike in the furtherance of justice. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529–530 (*Romero*).) We review a trial court's refusal to dismiss a prior strike conviction for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).) In *People v. Williams* (1998) 17 Cal.4th 148, our Supreme Court held that in deciding whether to dismiss a prior strike conviction, the court "must consider whether, in light of the nature and circumstances of the present felonies and prior serious and/or violent felony convictions, and the

13

particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams, supra*, 17 Cal.4th at p. 161.)

Following the jury verdict, the trial court found true the allegations that defendant suffered two prior serious felonies (§ 667, subd. (a)) which were also prior strike convictions (§ 667, subds. (c) & (d)). The prior convictions were a 2013 conviction for assault with a deadly weapon and a 2018 conviction for criminal threats. The trial court also found true the five aggravating factors alleged, which were that defendant was armed with a box cutter, the vehicle defendant attempted to take was of great monetary value, defendant's conduct posed a serious danger to society, defendant had multiple prior convictions of increasing seriousness, and defendant had served a prior prison term.

Defendant's motion to strike his two prior strikes argued that his current offenses did not involve the use of threats or weapons; his prior strikes involved a family dispute between defendant and his father, and the strikes were 10 and five years old, respectively; the majority of defendant's multiple other criminal convictions prior to his two strikes were drug charges, theft, and possession of firearm/ammunition by a felon, and they occurred while defendant was under the age of 28; the potential sentence of 25 years to life plus a determinate term is disproportionate to the harm caused by the current offenses; defendant previously suffered from addiction and successfully completed a six-month drug/alcohol treatment program while on probation for his 2018 conviction; and defendant's strikes should be struck in the interest of justice. The People's opposition argued that defendant, whose prior strikes were not remote and who had been either

14

incarcerated or committing new crimes since 2004, fell within the spirit of the Three Strikes law.

The trial court concluded that the interests of justice did not support granting defendant's *Romero* motion. In denying defendant's motion, the trial court noted that the current offenses were four years after the 2018 prior strike, which was five years after the 2013 prior strike. It further referred to defendant's multiple other prior convictions listed in the probation report beginning in 2005; his prior prison terms in 2005, 2006, 2011, and 2018; his four parole violations; and multiple misdemeanor convictions in 2016, 2017, 2018, and 2021.

We find no abuse of discretion. The record indicates the trial court considered the relevant facts and reached an impartial decision. (*Carmony, supra*, 33 Cal.4th at p. 378.) Defendant has failed to demonstrate that the trial court's decision was so irrational or arbitrary that no reasonable person could agree with it. (*Ibid.*)

## DISPOSITION

The judgment is affirmed.

Jackson, P. J.

WE CONCUR:

Burns, J.
Chou, J.

A172564/*People v. Jorge Estrada*

15